IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ROLEX WATCH U.S.A., INC., <br>      Plaintiff, <br>     v. <br><br> JEWELRY UNLIMITED, INC. and WAFI <br> AMIN LALANI, <br><br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    CIVIL ACTION FILE NO. |

**COMPLAINT FOR FEDERAL TRADEMARK COUNTERFEITING;
FEDERAL TRADEMARK INFRINGEMENT; FEDERAL FALSE
ADVERTISING; FEDERAL FALSE DESIGNATION OF ORIGIN, FALSE
DESCRIPTION AND DESIGNATIONS AND UNFAIR COMPETITION**

Plaintiff Rolex Watch U.S.A., Inc. ("Rolex" or "Plaintiff"), for its complaint against defendants Jewelry Unlimited, Inc. and Wafi Amin Lalani (collectively the "Defendants"), hereby alleges as follows:

**STATEMENT OF THE CASE**

1.  This is an action by Rolex against Defendants for injunctive relief, profits, trebled and/or statutory damages, pre-judgment interest, attorneys' fees and costs under the Lanham Act based on Defendants' counterfeit and infringing use of Rolex's trademarks in connection with the advertising, promotion, service and sale of watches and watch parts that are not authorized or sponsored by Rolex and that are not genuine products of Rolex.

## SUBJECT MATTER JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over the claims asserted in this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

3.    Defendants are subject to the Court's jurisdiction because they reside and/or do business in this Judicial District and have committed the acts complained of herein in this Judicial District.

4.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

## PARTIES AND PERSONAL JURISDICTION

5.    Rolex is a corporation duly organized and existing under the laws of the State of New York, having an office and principal place of business at 650 Fifth Avenue, New York, NY 10019.

6.    Defendant Jewelry Unlimited Inc. ("Jewelry Unlimited") is a corporation duly organized and existing under the laws of the State of Georgia, having an office and principal place of business at 4805 Briarcliff Road Northeast, Suite 105, Atlanta, Georgia 30345.  Jewelry Unlimited has committed the tortious acts complained of within this Judicial District.

7.    Defendant Wafi Amin Lalani ("Lalani") is an individual with a principal place of business at 4805 Briarcliff Road Northeast, Suite 105, Atlanta,

Georgia 30345.  Lalani is an owner, manager, member, operator and controlling force of defendant Jewelry Unlimited and has committed the tortious acts complained of within this Judicial District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Rolex's Famous Trademarks

8.    Rolex is one of the pre-eminent luxury and best-known watch brands in the United States and also the world.  For many decades, Rolex watches have been among the most prominent and bestselling luxury watch brands in the United States.

9.    Rolex's dominance of the luxury watch market is widely recognized by consumers, news organizations, and business, fashion and lifestyle publications.

10.   As early as 1912, Rolex or its predecessors have been the exclusive distributor and warrantor of new Rolex watches in the United States.

11.   Rolex is responsible for promoting, marketing and selling in interstate commerce throughout the United States high quality Rolex watches, watch bracelets, and related products (collectively, "Rolex Watches").

12.   Rolex Watches are of exceptionally high quality and are identified by the trade name and trademark ROLEX.

13.   Rolex is responsible for maintaining control over the quality of Rolex Watches and watch related services in the United States.

14.    Rolex has developed an outstanding reputation because of the uniform high quality of Rolex Watches.

15.    Rolex employs extensive testing and uses proprietary high-technology equipment to guarantee the precision, water resistance, self-winding and power reserve of the watch.

16.    A Rolex movement receives the designation of Superlative Chronometer, after it is submitted to the COSC, the Swiss Official Chronometer Testing Institute, for its official certification, after 15 days and 15 nights of testing involving seven eliminating criteria in five static positions and at three temperatures. After casing the movement, Rolex tests the precision of each watch over a 24-hour cycle, in seven static positions as well as in a rotating rack, according to an exclusive methodology that simulates real-life wear.

17.    The water resistance of each watch is tested by subjecting it to excess internal air pressure and then by immersion in a hyperbaric tank.   Watches guaranteed waterproof to a depth of 100 meters are tested at a water pressure equivalent to their rated depth plus 10 percent, while divers' watches – waterproof to 300, 1,220 and 3,900 meters – are tested with an additional safety margin of twenty-five percent.

18.    Rolex is the owner of the following trademarks and trademark registrations issued by the U.S. Patent and Trademark Office:

| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| **ROLEX** | 0,101,819 | 1/12/1915 | Watches, clocks, parts of watches and clocks, and their cases. |
| **OYSTER** | 0,239,383 | 3/6/1928 | Watches, movements, cases, dials, and other parts of watches. |
| **PRESIDENT** | 0,520,309 | 1/24/1950 | Wristbands and bracelets for watches made wholly or in part or plated with precious metals, sold separately from watches. |
| ♛ **(Crown Design)** | 0,657,756 | 1/28/1958 | Timepieces of all kinds and parts thereof. |
| ♛ **(Crown Design)** | 1,755,226 | 3/2/1993 | Jewelry. |
| **DATEJUST** | 0,674,177 | 2/17/1959 | Timepieces and parts thereof. |
| **GMT-MASTER** | 0,683,249 | 8/11/1959 | Watches. |
| **COSMOGRAPH** | 0,733,081 | 6/19/1962 | Watches and chronometers. |
| **SEA-DWELLER** | 0,860,527 | 11/19/1968 | Watches, clocks and parts thereof. |
| **MILGAUSS** | 0,875,616 | 8/26/1969 | Watches [and clocks,] and parts thereof. |
| **OYSTER PERPETUAL** | 1,105,602 | 11/7/1978 | Watches and parts thereof. |
| **YACHT-MASTER** | 1,749,374 | 1/26/1993 | Watches. |
| **SUBMARINER** | 1,782,604 | 7/20/1993 | Watches. |
| **ROLEX DAYTONA** | 1,960,768 | 3/5/1996 | Watches. |
| **DAYTONA** | 2,331,145 | 3/21/2000 | Watches. |
| **EXPLORER II** | 2,445,357 | 4/24/2001 | Watches. |
| **EXPLORER** | 2,518,894 | 12/18/2001 | Watches. |
| **AIR-KING** | 2,953,542 | 5/17/2005 | Watches and parts thereof. |
| **GMT-MASTER II** | 2,985,308 | 8/16/2005 | Watches and parts thereof. |

Correct and true copies of these federal trademark registrations (collectively, the "Rolex Registered Trademarks") are attached as **Exhibit 1**, which is incorporated herein by reference.

19.     The Rolex Registered Trademarks are in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065.

20.     The Rolex Registered Trademarks are distinctive and used to identify high quality products originating with Rolex.

21.     The Rolex Registered Trademarks are arbitrary and fanciful and are entitled to the highest level of protection afforded by law.

22.     Rolex and its predecessors have used the ROLEX trademark for nearly a century on and in connection with Rolex Watches and related products.  As such, the ROLEX trademark is one of the most famous marks in the world.

23.     Rolex and/or its predecessors have used the Rolex Registered Trademarks for many years on and in connection with Rolex Watches well prior to the activities of the Defendants complained of herein.

24.     Most Rolex Watches are identified by Rolex's registered ROLEX and/or ♛ (the "CROWN DESIGN") trademarks and one or more of, but not limited to, the following registered trademarks owned by Rolex: OYSTER, OYSTER

PERPETUAL, PRESIDENT, DATEJUST, COSMOGRAPH, GMT-MASTER, YACHT-MASTER, SUBMARINER, and DAYTONA (see **Exhibit 1**).

25.    Rolex uses the term "Superlative" on its Rolex Watches, because this term defines the outstanding quality of Rolex Watches, their components, and their reputation for precision, water resistance, simplicity, fine craftsmanship, comfort and durability.

26.    Because of the superior quality of Rolex Watches, consumers have long come to expect a Rolex Watch to be reliable, durable and maintain its timekeeping precision for years, if not decades.

27.    The general and necessary components of Rolex Watches include the following: the watch movement, the watch case, the dial, the bezel, the crystal, the hands, and the watch bracelet (which includes the watch clasp).

28.    Each Rolex Watch case bears a unique serial number.  Through that serial number Rolex is able to identify the original manufacture date and model of the Rolex Watch.

29.    New Rolex Watches are sold through Official Rolex Jewelers and are accompanied by a five (5) year warranty.

30.    Rolex also issues a two (2) year service warranty for Rolex Watches it services.

31.    The material alteration of Rolex Watches by the substitution or modification of integral parts renders the Rolex warranty null and void, because Rolex can no longer assure the quality or performance of such watches.  Similarly, Rolex may no longer service such watches, because it cannot guarantee the quality or performance of such watches.

32.    Rolex Watches are known to retain and/or increase in value, and the purchase of a pre-owned Rolex Watch is highly regarded in the watch industry as a smart and reliable investment.  Rolex Watches are built to last and customers view Rolex Watches as heirlooms that can last several lifetimes.

33.    Rolex also authorizes the sale of pre-owned Rolex Watches by its Official Rolex Jewelers through its Rolex Certified Pre-Owned program.  Rolex services each pre-owned Rolex Watch before resale to ensure and guarantee the quality and function of each watch sold as a Rolex Certified Pre-Owned watch.  Each Rolex Certified Pre-Owned watch comes with a two (2) year warranty.

## **DEFENDANTS' ACTIVITIES**

34.    Defendants' activities, complained of herein, began long after Rolex's adoption, use and registration of the Rolex Registered Trademarks on and in connection with its Rolex Watches.

- 8 -

35.   Defendants sell diamond jewelry and luxury diamond Rolex-branded watches at both their brick-and-mortar store and through their website and online marketplaces as detailed below.

36.   Defendants operate, own, and/or use the website http://www.jewelryunlimited.com (Defendants' "Website") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.  Attached as **Exhibit 2** are representative screenshots of the Defendants' Website taken on June 15, 2023, June 29, 2023 and July 27, 2023.

37.   Defendants operate, own, and/or use the website www.instagram.com/jewelryunlimited/ ("Defendants' Instagram Page") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.  Attached as **Exhibit 3** are representative screenshots of the Defendants' Instagram Page taken on June 15, 2023.

38.   Defendants operate, own, and/or use the website www.facebook.com/jewelryunlimited/ ("Defendants' Facebook Page") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.   Attached as **Exhibit 4** are

representative screenshots of the Defendants' Facebook Page taken on June 26, 2023.

39.    Defendants    operate,    own,    and/or    use    the    website www.tiktok.com/@jewelryunlimited/ ("Defendants' TikTok Page") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.   Attached as **Exhibit 5** are representative screenshots of the Defendants' TikTok Page taken on June 15, 2023.

40.    Defendants    operate,    own,    and/or    use    the    website www.youtube.com/@jewelryunlimited786/ ("Defendants' YouTube Page") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.  Attached as **Exhibit 6** are representative screenshots of the Defendants' YouTube Page taken on June 14, 2023.

41.    Defendants have a significant following on their social media accounts, including but not limited to, on Defendants' Instagram Page (965k followers), Defendants' Facebook Page (54K followers), Defendants' TikTok Page (683K followers), and Defendants' YouTube Page (595k subscribers) (collectively, "Defendants' Social Media Accounts").

42.    Defendants use the online marketplace www.ebay.com ("eBay") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.  Attached as **Exhibit 7** are representative screenshots of the Defendants' eBay store taken on June 9, 2023, June 12, 2023 and June 16, 2023.

43.    Defendants use the online marketplace us.vestiairecollective.com/ ("Vestiaire Collective") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.    Attached as **Exhibit 8** are representative screenshots of the Defendants' listings on Vestiaire Collective taken on July 17, 2023.

44.    Defendants use the website www.walmart.com ("Walmart") to advertise, promote and offer for sale merchandise bearing infringing and counterfeit copies of one or more of the Rolex Registered Trademarks.  Attached as **Exhibit 9** are representative screenshots of the Defendants' listings on Walmart taken on July 17, 2023.

45.    Defendants have posted a significant number of listings for merchandise bearing infringing and counterfeit copies of the Rolex Registered Trademarks across various online marketplaces, including but not limited to, eBay,

Vestiaire Collective and Walmart (collectively, Defendants' "Online Marketplace Accounts").

46.    On or about May 16, 2023, Rolex's investigator purchased what Defendants' Website described as a "Mens Rolex Datejust 36MM Blue MOP Dial Diamond Watch 3.0 Ct" for $6,999.99 ("Counterfeit Watch One"). The following is a photograph of Counterfeit Watch One:



Attached as **Exhibit 10**, and incorporated herein by reference, are additional photographs of Counterfeit Watch One.

47.    Rolex examined Counterfeit Watch One and determined that it was originally sold by Rolex as a Rolex Datejust model 1603/0, which was an all

stainless-steel watch with a steel, engine turned bezel.  The alterations to the original watch and working condition of Counterfeit Watch One include the following:

    a.  The dial is not of Rolex manufacture and bears counterfeit copies of the trademarks ROLEX, OYSTER PERPETUAL, and DATEJUST, which were unevenly painted onto the surface of the dial.  A replication and counterfeit copy of Rolex's  CROWN DESIGN trademark also was attached to the dial with a visible adhesive, which fails to meet Rolex's high quality standards;

    b.  The diamond bezel is non-genuine and the diamonds are not to Rolex's high quality standards;

    c.  The underside of the bezel has been carved out to make room for the winding crown, which fails to meet Rolex's high quality standards;

    d.  The watch case on Counterfeit Watch One failed Rolex's pressure test, and as a result would allow water to leak into the watch case through the bezel/crystal-gasket near the crown, which fails to meet Rolex's high quality standards; and,

e. The oscillating weight in the movement was loose, which caused the automatic winding feature not to function properly, which fails to meet Rolex's high quality standards.

48. The Rolex Registered Trademarks are the only source identifiers visible on Counterfeit Watch One.

49. On or about May 17, 2023, Rolex's investigator visited Defendants' retail store located at 4805 Briarcliff Road Northeast, Suite 105, Atlanta, Georgia 30345 ("Defendants' Retail Store").

50. At Defendants' Retail Store, Defendants offer for sale and sell jewelry and luxury diamond watches, including pre-owned Rolex watches that have been altered to include non-genuine diamond dials, bezels and/or watch bracelets.

51. The following are photographs taken by Rolex's investigator of some of the pre-owned Rolex watches being displayed at Defendants' Retail Store:

 

52.     On May 17, 2023, Rolex's investigator purchased what Defendants' sales associate described as a Ladies Rolex Datejust watch for $6,300.00 ("Counterfeit Watch Two").  The following is a photograph of Counterfeit Watch Two:



.

Attached as **Exhibit 11**, and incorporated herein by reference, are additional photographs of Counterfeit Watch Two.

53.    Rolex examined Counterfeit Watch Two and determined that it was originally sold by Rolex as a Ladies Date model 6916/3.  The alterations to the original watch and the working condition of Counterfeit Watch Two include the following:

a.   The dial is not of Rolex manufacture and bears counterfeit copies of the trademarks ROLEX, OYSTER PERPETUAL and DATEJUST, which were unevenly painted onto the surface of the dial.   A replication and counterfeit copy of Rolex's CROWN DESIGN trademark also was attached with an adhesive that is visible, which fails to meet Rolex's high quality standards;

b.   The trademark DATEJUST was incorrectly applied to the dial instead of the word DATE, which best describes the model, which fails to meet Rolex's high quality standards;

c.   The words "Superlative Chronometer Officially Certified" were also inaccurately and misleadingly  applied to the dial;

d.   The diamond bezel is non-genuine and the diamonds are not to Rolex's high quality standards;

e. The underside of the bezel has been carved out to make room for the winding crown, which fails to meet Rolex's high quality standards;

f. The watch case on Counterfeit Watch Two failed Rolex's pressure test, and as a result would allow water to leak into the watch case through the bezel/crystal-gasket near the crown, which fails to meet Rolex's high quality standards; and,

g. The bracelet is not a genuine product of Rolex, with the exception of the clasp, which was manufactured by Rolex.

54.   The watch movement associated with Counterfeit Watch Two was not tested to meet the standard of a Chronometer by the COSC and therefore the reference on the counterfeit dial "Superlative Chronometer Officially Certified" is false.

55.   The Rolex Registered Trademarks are the only source identifiers visible on Counterfeit Watch Two.

56.   Defendants' Counterfeit Watch One and Counterfeit Watch Two no longer perform or function to the same quality standards as unaltered, entirely genuine pre-owned Rolex Watches.

57.   On May 17, 2023, at Defendant's Retail Store, Defendants offered for sale jewelry, including earrings, rings and/or pendants, bearing copies of Rolex's Crown Design trademark.



58.   Defendants are not now, nor have they ever been, associated, affiliated, or connected with, or licensed, endorsed or sanctioned by Rolex.

59.   Defendants' Website, Instagram Page, eBay Page, Facebook Page and Online Marketing Accounts falsely advertise and offer for sale Rolex Watches in a manner calculated to mislead consumers.

60.   Defendants' acts as aforesaid are deliberately calculated to confuse and deceive the public and are performed with full knowledge of Rolex's rights.  Said acts constitute willful and deliberate infringement of Rolex's rights in the Rolex Registered Trademarks.

61.   Rolex is not able to monitor, enforce or maintain its quality control standards on the altered/counterfeit Rolex products Defendants assemble, offer for sale and sell.

62.   Defendants' use of the Rolex Registered Trademarks in the manner described above tends to and does create the erroneous impression that Defendants' products and services emanate or originate from Rolex, and/or that said products and services are authorized, sponsored, or approved by Rolex, even though they are not. This confusion causes irreparable harm to Rolex and the Rolex Registered Trademarks.

63.   Defendants' use of the Rolex Registered Trademarks in the manner described above tends to and does create the erroneous impression that Defendants' watches will meet the high standards of Rolex's quality, craftsmanship, durability and timekeeping accuracy.

64.   Defendants have been unjustly enriched by illegally using and misappropriating Rolex's intellectual property for their own financial gain. Furthermore, Defendants have unfairly benefited and profited from Rolex's outstanding reputation for high quality products and its significant advertising and promotion of Rolex Watches and the Rolex Registered Trademarks.

65. Defendants' acts, as set forth herein, were willful and deliberate. Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

66. Rolex has suffered irreparable harm and damages as a result of Defendants' conduct.

67. Upon information and belief, Defendants' acts will continue unless enjoined by this Court.

68. Rolex has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Trademark Counterfeiting, 15 U.S.C. § 1114

69. Rolex hereby incorporates by reference all prior allegations set forth in paragraphs 1- 68 herein.

70. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the ROLEX, CROWN DESIGN, DATEJUST and OYSTER PERPETUAL trademarks, and possibly other Rolex Registered Trademarks, on the counterfeit watches they sell.

71. Defendants have intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, offering for sale and sale of counterfeit watches.

72.    Defendants' unauthorized use of the Rolex Registered Trademarks as set forth above is likely to:

    a.  Cause confusion, mistake and/or deception;

    b.  Cause the public to believe that Defendants' counterfeit watches are genuine Rolex Watches, or that Defendants' products are authorized, sponsored or approved by Rolex, when they are not; and

    c.  Result in Defendants unfairly benefiting from Rolex's advertising and promotion, and profiting from Rolex's reputation and the Rolex Registered Trademarks, all to the substantial and irreparable injury to the public, Rolex, the Rolex Registered Trademarks, and the substantial goodwill represented thereby.

73.    Defendants' acts as aforesaid constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

74.    By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing three times Rolex's damages and/or Defendants' profits, whichever is greater, or, at Rolex's election, statutory damages; and (b) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Trademark Infringement, 15 U.S.C. § 1114

75.    Rolex hereby incorporates by reference all prior allegations set forth in paragraphs 1- 68 herein.

76.    Defendants use the Rolex Registered Trademarks to advertise and promote their watches in a manner which is likely to cause consumer confusion and mistake and to deceive consumers into believing that the Defendants' products and services are in some way authorized, sanctioned, or affiliated with Rolex, when they are not.

77.    Defendants' activities, complained of herein, constitute use in commerce of copies or colorable imitations of the Rolex Registered Trademarks in a manner which is likely to cause confusion and mistake in the minds of the public in violation of 15 U.S.C. § 1114.

78.    Defendants have engaged in the aforementioned activities with the intent to confuse and deceive the public into believing that Defendants and the merchandise they sell are in some way sponsored by, or affiliated or associated with Rolex, when in fact they are not.

79.    Defendants' acts as aforesaid constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80.    By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing Rolex's damages; (b) Defendants' profits; and (c) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### False Advertising In Violation Of 15 U.S.C. § 1125(a)

81.    Rolex repeats and realleges the allegations set forth in Paragraphs 1 through 68 above, as if fully set forth herein.

82.    Defendants, in their Website, social media channels, and other consumer-facing marketing and promotional materials, falsely advertise that all Rolex-branded watches that they offer for sale and sell are genuine.  As alleged above, contrary to their advertising claims made to the public, Defendants in fact have engaged in the sale and offering for sale of counterfeit and non-genuine Rolex-branded watches, while falsely advertising that such items are genuine.

83.    For example, on the FAQ page of Defendants' Website, in response to the posed question "Are the Watches Authentic?", Defendants advertise "Yes, All our watches are 100% authentic as made by the manufacturer.  We only deal in brand-name watches with or without genuine natural diamonds."

84.    In representing to consumers that their watches are "genuine" Rolex watches, Defendants are falsely advertising and/or misleading consumers as to the purported "genuine" nature of their secondhand Rolex products.  By so doing, Defendants are misrepresenting the nature, characteristics and/or qualities of certain of its Rolex-branded goods.

85.    Upon information and belief, in representing to consumers on its Website that certain Rolex-branded watches contain movements that have received the designation of "Superlative Chronometer Officially Certified," when, in fact, they have not, Defendants are falsely advertising and/or misleading consumers as to the age and "Certified" nature of the secondhand Rolex products offered for sale by Defendants.  By so doing, Defendants are misrepresenting the nature, characteristics and/or qualities of certain of its Rolex-branded goods.

86.    Upon information and belief, Defendants made these false and misleading representations in order to take advantage of Rolex's renown and reputation so as to induce consumers to purchase Defendants' Rolex-branded products.

87.    Rolex has an interest in stopping Defendants from deceiving consumers into believing that Defendants offer products that are either authentic and/or that

have been designated as "Superlative Chronometer Officially Certified," when they are not.

88.    Defendants' implicit false statements of the authenticity, nature and quality of its Rolex-branded watches have caused and are likely to cause consumers to mistakenly believe that Defendants' watches are the genuine products of Rolex when, in fact, they are not.

89.    Defendants' false and misleading advertisements about its Rolex-branded products have actually deceived or are likely to deceive a substantial portion of the intended audience and harm Rolex's reputation.

90.    The false and misleading misstatements made by Defendants are material and are likely to influence purchasing decisions, including decisions to purchase such goods from Defendants.

91.    Defendants' conduct is willful or willfully blind.  Defendants' conduct described herein is causing immediate and irreparable injury to Rolex, by selling counterfeit goods, and by harming Rolex's goodwill and reputation, and will continue to damage Rolex and deceive consumers unless enjoined by this Court.

92.    Defendants' acts constitute false advertising and false representations in violation of 15 U.S.C. § 1125(a).  Rolex has no adequate remedy at law.

93.    Upon information and belief, Defendants received substantial revenues and substantial profits arising out of its acts of passing off and false advertising to which it is not entitled, and Rolex also suffered damages as a result of Defendants' acts of false advertising, for which Defendants are responsible.

## FOURTH CAUSE OF ACTION

### False Designation of Origin, False Descriptions and Representations, and Unfair Competition, 15 U.S.C. § 1125(a)

94.    Rolex hereby incorporates by reference all prior allegations set forth in paragraphs 1- 68 herein.

95.    Defendants' acts as aforesaid constitute the use in commerce of false designations of origin, false descriptions and representations, and unfair competition because such designations, descriptions and representations tend to falsely designate, describe and/or represent Defendants' counterfeit and altered watches as those of Rolex in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.    By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing Rolex's damages; (b) Defendants' profits; and (c) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

**WHEREFORE**, Rolex respectfully requests a judgment in favor of Rolex providing the following relief:

I.    That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined and restrained from:

    a.    Using any reproduction, counterfeit, copy or colorable imitation of the Rolex Registered Trademarks to identify any goods or the rendering of any services not authorized by Rolex;

    b.    Engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Rolex's business reputation or dilute the distinctive quality of the Rolex Registered Trademarks;

    c.    Using a false description or representation, or engaging in any false advertising, including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods or services as being those of Rolex or sponsored by or associated with Rolex and from offering such goods in commerce; and,

    d.    Using or continuing to use the Rolex Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a

website, or as a keyword, search word, metatag, or any part of the description of the site) in connection with any goods or services not authorized by Rolex.

e.  Disseminating any false and/or misleading information relating to the authenticity or nature of Defendants' goods and services with respect to Rolex.

f.  Disseminating any false and/or misleading information about Rolex, the Rolex Registered Trademarks, and/or Rolex products;

g.  Engaging in any other activity constituting false advertising of Rolex products.

h.  Engaging in any other activity constituting unfair competition with Rolex.

i.  Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h) above.

II.    That Defendants, within ten (10) days of judgment, take all steps necessary to remove from their Retail Store, Website, Social Media Accounts, Online Marketplace Accounts or any other website or social media site containing content displayed or posted by Defendants, whether or not owned or operated by

Defendants, all altered/counterfeit or infringing Rolex products and all text using Rolex Registered Trademarks or copies or colorable imitations thereof used to identify altered/counterfeit Rolex products.

III.    That Defendants, within thirty (30) days of judgment, file and serve upon Rolex a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

IV.    That Defendants be required to account to Rolex for all profits resulting from Defendants' sale of altered/counterfeit or infringing Rolex products and that the award to Rolex be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Rolex be awarded statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 for each mark Defendants have counterfeited.

V.    That Rolex recover from Defendants the costs and disbursements of this action in addition to reasonable attorney and investigator fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

VI.    That Defendants be required to deliver up for destruction to Rolex all materials/goods bearing counterfeit or infringing copies of the Rolex Registered Trademarks pursuant to 15 U.S.C. § 1118.

VII.    That Rolex be awarded punitive damages for Defendants' willful and malicious acts of counterfeiting, infringement, false designations of origin, false

descriptions and representations, and unfair competition to deter future unlawful activities as complained of herein.

VIII.     That this Court retain jurisdiction of this action for the purpose of enabling Rolex to apply to the Court at any time for such further orders and interpretation or enforcement of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

IX.     That pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 777 for malicious, willful and fraudulent injury to Rolex.

X.     That Rolex be awarded such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 31st day of July, 2023.

s/Joel D. Bush, II
Joel D. Bush, II
Georgia Bar No. 098775
KILPATRICK TOWNSEND & STOCKTON
    LLP
1100 Peachtree Street N.E., Suite 2800
Atlanta, GA  30309-4528
Phone:  (404)815-6500
Fax:      (404)815-6555

Brian W. Brokate
*Pro Hac Vice Application to be Filed*
Beth Frenchman
*Pro Hac Vice Application to be Filed*
Jeffrey E. Dupler
*Pro Hac Vice Application to be Filed*
Maja Szumarska
*Pro Hac Vice Application to be Filed*
Gibney, Anthony & Flaherty LLP
650 Fifth Avenue
New York, New York 10019
Telephone: (212) 688-5151

Theodore C. Max
*Pro Hac Vice Application to be Filed*
Tyler E. Baker
*Pro Hac Vice Application to be Filed*
Sheppard Mullin Richter &
Hampton LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

*Counsel for Plaintiff Rolex Watch U.S.A., Inc.*